IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 8:23CR46 |
| vs. | TRIAL BRIEF |
| MICHAEL REIS, | |
| Defendant. | |

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney for the District of Nebraska, Martin J. Conboy IV, and hereby submits its trial brief. The parties have been able to agree to some stipulations prior to trial. As a result, it is estimated that the trial will last approximately 3 days.

## FACTS

On March 12, 2022, at 4:32 p.m., Douglas County Sheriff's Office (DCSO) Deputy Joshua Swafford responded to a 911 call at XXXX N. 95th Court, in Omaha, Nebraska. Swafford was advised that a 4-year-old was not breathing. Upon arrival at the location, Swafford observed the mother, Paris Hunt (Paris), administering CPR on the child, P. H. Swafford noted that P.H. was unresponsive. Swafford took over CPR on P.H. Eventually, EMS arrived and P.H. was transported to Children's Hospital and Medical Center (Children's). During the incident, Paris was asked if it was possible that P.H. had ingested anything that could have caused this reaction. Paris stated that the only thing that P.H. could have possibly taken was "half of a Percocet" that was in a bottle on Paris's nightstand. This information was relayed to EMS. EMS then administered Narcan due to the potential ingestion of narcotics.

1

At 5:00 p.m., P.H. was admitted into Children's Emergency Department still in cardiac arrest. As part of the care, at 5:30 p.m., an extra blood sample was drawn from P.H. and put in a vial labeled C22-071CC0115. C22-071CC0115 was sent to the laboratory for storage. At 5:37 p.m., P.H. was transferred to the Pediatric Intensive Care Unit and remained in critical condition. Despite continued efforts, P.H. was eventually declared deceased on March 15, 2022.

Dr. Suzanne Haney is the director of Project Harmony and both the Division Chief and Interim Division Chief at Children's for Child Abuse Pediatrics and Palliative Care, respectively. Dr. Haney consulted on the care for P.H. while P.H. was at Children's.

On March 17, 2022, Dr. Robert Bowen, the Douglas County Coroner, performed an autopsy on P.H. As part of the process, a number of photographs were taken. Dr. Bowen sent the blood that was drawn on March 12, 2022, at 5:30 p.m. (C22-071CC0115) to Axis Forensic Toxicology. Axis Forensic Toxicology tested C22-071CC0115. The results showed that blood taken at the admission of P.H. to Children's contained 8.1 ng/mL of fentanyl and 9.8 ng/mL of norfentanyl. Dr. Bowen determined that the cause of death of P.H. was fentanyl toxicity.

Following P.H.'s admission to Children's on March 12, 2022, at 6:15 p.m. DCSO Crime Scene Investigator Heather Rohwer arrived at XXXX N. 95th Court. Rohwer noted several pill bottles in the kitchen and master bedroom, however, the pill bottles were either out-of-reach of children, empty, still secured, or did not appear to have been disturbed. A single blue plastic pill bottle lid was located on the bed (there was no corresponding pill bottle located) that appeared to contain white residue. Rohwer took numerous photographs at the scene.

The blue plastic lid was sent to the DCSO Forensic Services Bureau for testing. On March 22, 2022, Forensic Chemist Anita Lang tested the lid and determined that the white

residue contained fentanyl.

DCSO Investigator Josh Echtinaw was assigned to assist in the overdose of P.H. on March 17, 2022. Echtinaw is also a Task Force Officer with the Drug Enforcement Administration investigating narcotic overdoses. On March 18, 2022, Echtinaw went to XXXX N. 95th Court. This location was part of the Aspen Grove apartment complex. Echtinaw met with Carolyn Kier, who was the manager of Aspen Grove. Aspen Grove did have various video cameras in the complex that Kier was able to access. Kier was able to pull up videos relating to the time frame of when P.H. overdosed. Echtinaw was able to identify one vehicle of interest but could not immediately identify the vehicle other than it looked silver. In addition to the vehicle, Echtinaw identified a black adult male with the vehicle.

Echtinaw believed that an individual by the name of Michael Reis was potentially involved in the case. Echtinaw learned that Reis had an active warrant which had (402) 707-5857 listed as a potential phone number for Reis. March 17, 2022, Echtinaw received subpoenaed data from Sprint regarding (402) 707-5857. Echtinaw was able to determine that (402) 707-5857 had numerous contacts with a number for Paris Hunt between 3:35 p.m. and 3:43 p.m. on March 12, 2022. On March 27, 2022, Omaha Police Department officer Adam Barcal conducted a traffic stop on Reis. During the traffic stop, Reis was arrested on the outstanding warrant. Echtinaw responded to the traffic stop and seized Reis's phone.

On March 28, 2022, a search warrant was obtained by Echtinaw on Reis's phone. The search warrant was executed on April 4, 2022, at the DCSO by deputy Mark Dishaw. Dishaw performed an extraction of the contents of Reis's phone into a report generated by Cellbrite. This Cellbrite report was then saved on a hard drive and returned to Echtinaw.

After receiving the hard drive, Echtinaw compiled various data, including message threads, photos, raw data, log entries, and application data into a timeline around the events leading up to the hospitalization of P.H. Echtinaw reviewed messages between a contact saved as "Big Kayla," with the phone number listed as (402) 216-9217. Echtinaw was able to identify Big Kayla as Michaela Hawkins by an Omaha Police Department report on March 30, 2022, in which Hawkins was driving a rental vehicle and listed (402) 216-9217 as her number. Echtinaw was able to obtain information from E.A.N. Holdings (Enterprise Rental), that showed Hawkins had rented a gray 2021 Kia K5 4LXS LT on March 9, 2022. The rental agreement had the return date of March 15, 2022. Echtinaw found messages between Hawkins and Reis on March 9, 2022, in which Hawkins mentions she has a rental. On March 12, 2022, at 7:28 p.m., Hawkins asks Reis "Can you please put gas in the car" and he responds back almost immediately "Already did blood." Looking at the Aspen Grove video, Echtinaw was able to recognize the vehicle as a Kia K5, which has several notable features.

Echtinaw also observed conversations between Reis and (531) 225-3570 which was saved in Reis' contact information as "Hersh Girl." Law enforcement data bases searched by Echtinaw potentially identified the user of (531) 225-3570 as Laquai Williams. In the message threads the user of (531) 225-3570 identified herself as "quai" on different occasions. On several occasion in the month prior to March 12, 2022, Reis was contacting Williams for single or multiple pills, sometimes described as "30s." On March 10, 2022, Reis asks Williams "Can I shop with u or not," to which she replies, "not ready." On March 11, Reis asks Williams if she is "Ready." On March 12, 2022, at 2:09 p.m., Williams responds "Ready." Reis replies back "Alright" then at 2:43 pm. he informs Williams "Imfinna pull up."

Echtinaw was able to identify the number of Paris Hunt, (402) 301-1457, in Reis' phone under "Parris." Echtinaw noted extensive conversations between Hunt and Reis regarding "M-30s," "oxys," and "percs." The two discussed using CashApp, a peer-to-peer digital payment system owned by Block, Inc., for Hunt to send money to Reis for these transactions. Echtinaw knows, from his training and experience, that M-30s, oxys, and percs, are synonymous in the drug trade for what are commonly fake M-30 oxycodone pills that contain fentanyl.

On March 12, 2022, Hunt messages Reis "U gotta that" at 1:55 p.m. Reis responds back "How many" at 2:19 p. and Hunt replies "1" at 2:30 p.m. Reis responds at 2:31 p.m. "Alright" and then at 2:52 p.m. tells Hunt that "I'm on my way."

CashApp records were found in Reis' phone. In addition, authenticated copies were obtained from CashApp for both Hunt and Reis. Echtinaw noted that after several of the previous narcotic transactions, Hunt sent Reis money. On March 12, 2022, at 3:05 p.m., Hunt sent $30 via CashApp to Reis.

Reis was arrested on a federal warrant on October 26, 2023. On that same day, Echtinaw met with Reis for a recorded post-arrest interview. Echtinaw began the interview by advising Reis of his rights, which Reis indicated that he understood his rights and that he was willing to talk with Echtinaw. Echtinaw denied that he ever dealt narcotics to Paris Hunt. When Reis was shown the CashApp payments from Hunt he said it was for "weed." When asked about March 12, 2022, in the afternoon, Reis cut off Echtinaw and said he remembered that, that Hunt wanted something for pain but that he was going to help her look around. He denied that he wen to her apartment.

Echtinaw then asked Reis if he knew Big Kayle which he indicated that he did. Reis

stated he took Big Kayla's rental car one night. Reis denied taking the rental to Hunt's. Reis later admitted to using the rental to go to Hunt's.

Reis also acknowledged knowing Hersh Girl. Reis denied going to Hersh Girl's place on March 12, 2022, to pick up any pills. After being showed the messages from Hersh Girl, Reis stated that "at the time" he was doing pills, but said it was for both Hunt and him. Reis did acknowledge that he sold 30s for $30 each. Reis denied ever going to Hersh Girl's place to pick up pills, but after being showed messages that he did, he admitted that he did.

Reis said he didn't remember going to Aspen Grove on March 12, 2022, and that he was faded after using the pills himself.

After being told why he was arrested, Reis explained he helped get a perc-15 for Hunt for pain. He denied selling the pill to Hunt and that the $30 sent by Hunt was for something else. Reis continued to argue that he "put the pill in her hand" and that he shouldn't be held responsible. "We did the half, she got the one, and I left. I told her to put it up." Reis later said that it was a 30.

Investigators tried to get Reis to talk about those that gave him the pill and Reis refused to talk about them. When Reis was asked about sharing responsibility, Reis said that he accepted responsibility and responsibility and repeated about doing half a pill and giving another to Hunt. He said "he didn't want to sell it to her…she begged me." He asks Echtinaw if Hunt told him that they were doing the pill together and says something about the pill cap.

Potential Evidentiary Issue

<u>Self-authenticating Business Records</u>

The Government intends to offer records from E.A.N Holdings DBA Enterprise Rental and Block, Inc. (which owns CashApp). Both E.A.N Holdings and Block, Inc. store digital records in the same vein as most electronic service providers. The records are self-authenticating under Fed. R. Evid 902(11), 902(13), and 902(14). The Government will offer a certificate of authentication of domestic records for both E.A.N Holdings and Block, Inc.. The records meet the business records exception. Fed. R. Evid. 803(6). *United States v. Landaverde-Giron*, 2018 WL 902168, *2 (D. Md. Feb. 14, 2018) (recognizing that "Facebook records are proper business records that meet the requirements of Rule 902(11)" and that the Government provided sufficient evidence to show the account was linked to the defendant); *United States v. Hassan*, 742 F.3d 104, 133-34 (4th Cir. 2014) (Facebook pages and YouTube videos self-authenticating under Rule 902(11)); *United States v. Jones*, 2016 WL 10704381, *2-3 (E.D. La. Feb. 17, 2016) (Facebook, Google, and Samsung records admissible as business records exception along with 902(11) certificate); *United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) (Google and Yahoo! records admissible as business records and self-authenticating with a custodian certification).[1]

The United States intends to file a motion in limine simultaneously with this brief pursuant to the Criminal Rules of the United States District Court for the District of Nebraska (local rule) 12.3 for this Court to address this issue prior to trial.

---

[1] *See also Randazza v. Cox*, 2014 WL 1407378, *4 (D. Nev. Apr. 10, 2014) (YouTube video self-authenticating if certified by custodian of records in accordance with hearsay exception for business record); *United States v. Gal*, 606 F. App'x 868, 874–75 (9th Cir. 2015) (Yahoo! Records were self-authenticating under Fed. R. Evid. 902(11) as to fact that emails were sent or received from particular email address and identity of the email's sender was established by other extrinsic evidence).

Paris Hunt's Statement to Deputies

Federal Rule of Evidence 803(2) allows for admission of hearsay statements if they relate to a startling event or condition, if the declarant was under the stress or excitement the event or condition caused at the time of the statement. The basis of the exception is the idea that a person speaking while stressed or shocked has a trustworthiness "that is not present when the declarant has the opportunity for reflection and deliberation." *United States v. Graves*, 756 3d. 602, 605 (8th Cir., 2014). Courts consider several factors to determine whether the declarant utters his or her statement while still under the stress of excitement caused by the event. These include the time lapse between the event and the statement, whether the statement was spontaneous or made in response to an inquiry, the characteristics of the event, the subject matter of the statement, and characteristics of the declarant, such as age, mental state and physical condition. *Id.*

In this case, it is hard to imagine a more stressful or emotional situation for a parent and the statements made by Hunt clearly related to the event. She made her statements about P.H. possibly taking half of a Percocet after P.H was rushed out by EMS to be transported to Children's. While she was asked by deputies generally what had happened and if it was possible that P.H. had gotten into anything, the questioning was not detailed, interrogation-style questioning. *Id.* at 606, citing to *United States v. Elem*, 845 F.2d 170, 174, (8th Cir. 1988). Indeed the limited questions were meant to move along the life saving methods being employed, further reducing the risk that Ms. Hunt would fabricate her statement. Additionally, the documentation provided by the deputies indicates that she was not in a mental or physical condition indicative of anything other than extreme stress. Deputies described her as "crying," "understandably hysterical," and "completely distraught." In other words, it appears her physical

and mental condition made her incapable for reflection or deliberation about what she was saying. Her statements about P.H.'s possible ingestion of half a Percocet pill and where she had last seen the pill are clearly excited utterances and therefore excepted from the rule against hearsay.

Her statements also qualify as non-hearsay under Fed. R. Evid. 803(4). Federal Rule of Evidence 803(4) allows for admission of a hearsay statement that is made for and is reasonably pertinent to medical diagnosis or treatment and describes medical history; past or present symptoms or sensations; their inception; or their general cause. The rule is grounded in the logic that such statements are trustworthy, because a situation "where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility." *United States v. Earth*, 984 F.3d 1289, 1296 (8th Cir. 2021).

*Earth* involved the admission of statements made to medical professionals – first in an ambulance and then in a hospital - in the course of the assault. The Court found no error in the admission of statements made by the victim to the EMT in the ambulance about what had happened, ruling that the "statements are easily admissible under Rule 803(4)" *Id.*

In this case, the statements were made to deputies, but who were responding in a medical capacity. Deputies were dispatched to assist the Irvington Fire Department for a four-year-old male that was not breathing. Upon hearing that P.H. could have taken "half of a Percocet," deputies immediately relayed this information to the EMS so that P.H. could be given Narcan. Hunt's statements about what could have potentially caused P.H. to stop breathing should be admissible under the medical exception as they were made solely with the intent to further P.H.'s emergency medical treatment.

Because the exception is grounded in the idea that statements made for the purpose of medical treatment are reliable, the declarant must be "the person seeking treatment, or in some instances from someone with a special relationship to the person seeking treatment, such as a parent." *Stull v. Fuqua Industries, Inc.* 906 F.2d 1271, 1273-74 (8th Cir. 1990). Again, at the time the statements were made, P.H. was not breathing and could not speak for himself. His mother's statements should be allowed in.

The United States intends to file a motion in limine simultaneously with this brief pursuant to the Criminal Rules of the United States District Court for the District of Nebraska (local rule) 12.3 for this Court to address this issue prior to trial.

<u>Penalties</u>

The United States has moved to preclude Defendant, his attorney, and any witness from referring to the possible penalty or punishment Defendant will face if convicted of the crime charged. It would be improper for the jury to hear information about what penalty or punishment Defendant would face.

"It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." Shannon v. United States, 512 U.S. 573, 579 (1994). The jury's role "is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." <u>Id.</u> "[P]roviding jurors sentencing information invites them to ponder matters ... not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." <u>Id.</u> The jury must be able to carry out its role uninfluenced by the consequence of its verdict. <u>Id</u>. at 578; United States v. Fisher, 10 F.3d 115, 121 (3d Cir. 1993) ("[F]ederal criminal juries are almost

never instructed concerning the consequences of verdicts.").

The United States intends to file a motion in limine simultaneously with this brief pursuant to the Criminal Rules of the United States District Court for the District of Nebraska (local rule) 12.3 for this Court to address this issue prior to trial.

                                                        UNITED STATES OF AMERICA,
Plaintiff

SUSAN T. LEHR
United States Attorney

By:   s/ Martin J. Conboy IV
MARTIN J. CONBOY IV (#22257)
Assistant United States Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-3700

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify on September 30, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: Joseph Howard, attorney of record.

s/ Martin J. Conboy IV
MARTIN J. CONBOY IV
Assistant United States Attorney